UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

REGENT INSURANCE COMPANY,

        Plaintiff,

and

ROMO, INC.,

        Involuntary Plaintiff,

v.

THE CINCINNATI INSURANCE COMPANY
and BRISKHEAT CORPORATION,

        Defendants.

Case No. 14-C-1434

---

**DECISION AND ORDER DENYING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

---

Plaintiff Regent Insurance Company (Regent Insurance) and its insured, involuntary plaintiff Romo Incorporated (Romo), filed this suit against The Cincinnati Insurance Company (Cincinnati Insurance) and its insured, Briskheat Corporation (Briskheat), for negligence and strict product liability in the Circuit Court for Brown County on October 21, 2014. Plaintiffs claim that Briskheat negligently manufactured, tested, and/or serviced a barrel heater. Plaintiffs allege Briskheat's negligence caused a drum of polymer to overheat and vaporize, resulting in damages to Romo's property. In the alternative, Plaintiffs claim that Briskheat is strictly liable for the damages because the barrel heater had a manufacturing defect at the time it was purchased by Romo. Plaintiff Regent Insurance paid Romo $280,305.34 to cover clean up costs from the malfunction and seeks recovery of this amount along with its insured's deductible from Cincinnati Insurance and Briskheat.

Noting federal jurisdiction under 28 U.S.C. § 1332 based on the diverse citizenship of the parties and the amount in controversy, Defendants removed the case to federal court pursuant to 28 U.S.C. §§ 1441 and 1446. The case is before the Court on Defendants' motion for summary judgment. For the reasons that follow, Defendants' motion will be denied.

## BACKGROUND

Plaintiff Regent Insurance is a Wisconsin corporation with its principal place of business in Sun Prairie, Wisconsin, and is engaged in the business of providing property and casualty insurance. Prior to December 21, 2012, Regent Insurance issued an insurance policy to Romo, a printing company, covering damages to real estate, real property, fixtures, other personal property, and business as a result of any negligence of third parties. Romo is also Wisconsin corporation with its principal place of business in De Pere, Wisconsin. Between August and November of 2011, Romo purchased five barrel heaters from Briskheat, a Delaware corporation with its principal place of business in Columbus, Ohio. Briskheat is insured by Cincinnati, an Ohio corporation with its principal place of business in Cincinnati, Ohio.

A barrel heater is a piece of industrial equipment which wraps around a barrel and allows the user to keep the contents of the barrel heated to a set temperature. Barrel heaters have four main components: a large flexible wrap heating element, a temperature controller, a temperature sensor, and a high-temperature indicator light. During operation, the temperature controller and high-temperature indicator light are attached to the wall, while the flexible wrap element remains movable and may be wrapped like a belt around the bottom of a 55-gallon barrel. The temperature sensor and bellows are housed in an attachment on the temperature controller and are connected to a capillary tube by a solder joint. The capillary tube contains a liquid which expands as the temperature of the

barrel increases to the desired temperature. Once the desired temperature is reached, the expansion of this fluid triggers the temperature controller to turn off heat to the wrap.

On December 21, 2012, one of the five barrel heaters purchased by Romo malfunctioned, causing the contents of the barrel to vaporize and resulting in large clean-up costs for Romo. The parties' experts agree that the malfunction occurred because of a cracked solder joint between the barrel heater's capillary tube and bellows. Fluid was released because of the crack in the solder joint and, as a result, the pressure in the capillary tube could not rise high enough to trigger the heat shut-off. As a further result the heat continued to rise past the set temperature until the resin in the barrel was vaporized. The parties disagree on the cause of the crack in the solder joint and neither party has offered evidence definitively answering the question of when the solder joint cracked.

At the time of the malfunction the barrel heater at issue had been running continuously for "a couple of months." The device had been wrapped around a 55-gallon drum of resin in Romo's facility. Viewing the evidence in the light most favorable to Plaintiffs, Theodore (Ted) and Nicholas McGee installed the barrel heaters and were the only Romo employees who would have operated or used the barrel heater at issue. Some time before the incident, Ted McGee serviced the temperature controller on one of the barrel heaters owned by Romo. Romo denies, however, that Ted McGee ever serviced the temperature sensor part of the device. Yet, at some point either Romo or Briskheat serviced the temperature sensor. This fact is evidenced by tool marks on parts of the temperature sensor and a missing screw on the temperature sensor housing. Both parties deny that their employees ever had the opportunity or motive to service the temperature sensor. The parties do not know whether the device was serviced before or after the malfunction at issue. Plaintiffs' expert witness opined that the improper servicing of the temperature sensor most likely caused the

3

damage to the solder joint that lead to its failure. March 6, 2013 Report of Edward Chow, P.E., and Jon Peterson at 4 (ECF No. 12-9).

The barrel heater at issue had twice been returned to Briskheat for repairs because the device had been failing to maintain a stable temperature. Instead, the heater would heat up to the set temperature of 150º F but then, rather than maintaining that temperature, the heater would turn off and the temperature would drop to 90º F. The first time the device was sent in, Briskheat could not replicate the malfunction and no action was taken. The second time the device was sent in, Briskheat discovered that the device had the wrong model of thermostat (TS) and replaced it with the correct model. That was more than a year prior to the failure, however, and Briskheat denies that the temperature sensor was ever tested or serviced either time it was returned, noting that the sensor housing has nothing to do with the thermostat.

## DISCUSSION

**A. Summary Judgment Standard**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *McNeal v. Macht*, 763 F. Supp. 1458, 1460–61 (E.D. Wis. 1991). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In deciding a motion for summary judgment, the court will view the facts in the light most favorable to the non-moving parties. *Crull v. Sunderman*, 384 F.3d 453, 460 (7th Cir. 2004).

4

**B. Negligence**

To establish a claim of negligence in Wisconsin, "a plaintiff must prove: (1) the existence of a duty of care on the part of the defendant, (2) a breach of that duty of care, (3) a causal connection between the defendant's breach of the duty of care and the plaintiff's injury, and (4) actual loss or damage resulting from the injury." *Gritzner v. Michael R.*, 2000 WI 68, ¶ 19, 235 Wis. 2d 781, 790–91. Manufacturers have a duty to "exercise ordinary care in the design, construction, and manufacture" of their products. 3240 Wis. JI-Civil (negligent manufacturing); *see* Restatement (Second) of Torts § 395 (1965). Manufacturers have the further duty in the exercise of ordinary care to make all reasonable and adequate tests and inspections "so as to guard against any defective condition which would render such product unsafe when used as it is intended to be used." 3240 Wis. JI-Civil. "Negligence is ordinarily an issue for the fact-finder and not for summary judgment." *Lambrecht v. Estate of Kaczmarczyk*, 2001 WI 25, ¶ 2, 241 Wis. 2d 804, 807.

As an alternative to showing a specific instance of negligence a plaintiff may attempt to prove negligence through application of the doctrine of *res ipsa loquitur*, Latin for "the thing speaks for itself." *Res ipsa loquitur* is "meant to bridge an evidentiary gap when an injury could not have happened but for the defendant's negligence." *Buechel v. United States*, 746 F.3d 753, 765 (7th Cir. 2014). Instruction on *res ipsa* is appropriate only when:

> (a) either a laymen is able to determine as a matter of common knowledge or an expert testifies that the result which occurred does not ordinarily occur in the absence of negligence, (b) the agent or instrumentality causing the harm was within the exclusive control of the defendant, and (c) the evidence offered is sufficient to remove the causation question from the realm of conjecture, but not so substantial that it provides a full and complete explanation of the event.

*Peplinski v. Fobe's Roofing, Inc.*, 193 Wis. 2d 6, 17 (1995).

Here, I conclude that the doctrine of res ipsa loquitur does not apply. "Res ipsa requires proof that the event in question would not occur in the absence of negligence, and that the instrumentality causing the harm was within the exclusive control of the defendant." *Minergy Neenah, LLC v. Rotary Dryer Parts, Inc.*, 2008 WL 943148, at *6 (E.D. Wis. Apr. 7, 2008). The idea that res ipsa applies in this case directly contradicts Plaintiff's own expert, who stated that non-negligent conditions could have caused the solder joint to break here. For example, normal expansion and contraction of the liquid in the capillary tube could have caused the break. Additionally, Plaintiffs fail to establish that the barrel heater was within Briskheat's exclusive control. Indeed, for all but a short part of the relevant time period, the device was in Romo's exclusive control. Plaintiffs' argument that the temperature sensor was within Briskheat's exclusive control because Romo never took the housing off the temperature sensor to gain access to it assumes a fact at issue—namely, that Briskheat personnel disassembled the temperature sensor. Furthermore, the temperature sensor could have been damaged even absent removal of its housing. Plaintiff's use of res ipsa is merely an attempt to repeat or bolster Plaintiffs' specific negligence argument. Because Plaintiffs have failed to establish the essential elements of res ipsa loquitur, I conclude it does not apply in this case.

The parties to this case offer three possible explanations for why the barrel heater at issue malfunctioned. First, the barrel heater could have been defectively manufactured with a weakened solder joint. Second, the temperature sensor could have been negligently serviced by one of the parties, creating a defective condition in the temperature sensor and ultimately leading to the solder joint breaking. Third, the temperature sensor could have been negligently handled, twisted, dropped, or otherwise impacted, causing the solder joint to weaken or break. None of the experts in this case

can definitively say which of these explanations is correct. In his initial report, Plaintiffs' expert opined that the damage to or weakening of the solder joint probably occurred during the disassembly and reassembly of the sensor housing. March 6, 2013 Report of Edward Chow, P.E., and Jon Peterson at 4 (ECF No. 12-9). Both Romo and Briskheat deny that any of their employees disassembled or mishandled the sensor, and thus each infers that it must have been done by the other.

Defendants argue against Plaintiffs' negligence claim, alleging that they never had an opportunity or reason to repair the temperature sensor. Defendants also argue that there is no evidence that the temperature sensor was even serviced prior to the malfunction in this case. Finally, Defendants posit that if anyone serviced the barrel heater it was Romo's employee Ted McGee. According to Defendants, these facts, taken together, do not leave a genuine dispute about whether they negligently serviced the temperature sensor.

In reply, Plaintiffs argue that a joint evidence inspection revealed numerous issues with the condition of the device. According to Plaintiff's expert Mr. Chow, the temperature sensor was serviced improperly, likely leading to the malfunction:

> The study of the temperature controller and temperature sensor housing reveals that they were disassembled prior to the loss. The mismatched serial numbers on the cover and inside body of the controller is evidence that whoever disassembled the controller did not reassemble it using the same parts. The missing screw and dirt on the back side of the sensor housing is evidence that the sensor housing was taken apart and reassembled improperly. The tool marks on the two nuts used to hold the capillary tube and bellows to the housing is evidence that they were taken apart. It is probable that the disassembly and reassembly of the sensor housing, and capillary tube and bellows caused the leak in the capillary tube joint.

March 6, 2013 Report of Edward Chow, P.E., and Jon Peterson at 4 (ECF No. 12-9). According to Romo, none of its employees ever serviced the temperature sensor. Though Ted McGee serviced the temperature controllers of one of the heating units, that is a separate part of the device from the

7

temperature sensor. Plaintiffs thus reason that because only Romo and Briskheat ever had access to the device and Romo never serviced the temperature sensor, the defective servicing must have been performed by Briskheat.

I conclude that the evidence of record raises a genuine dispute of material fact as to whether Briskheat breached its duty of care to Romo. Viewed in a light most favorable to Plaintiffs, the evidence would allow a jury to conclude that someone from Briskheat negligently damaged the solder joint while disassembling and/or reassembling the temperature sensor on the device that malfunctioned. While it is true that Briskheat vigorously disputes this and denies that its employees serviced the temperature sensor, Romo likewise denies that any of its employees serviced, mishandled or tampered with it in any way. Yet, it appears clear from the experts' analysis that someone tampered with the temperature sensor before the malfunction that damaged Romo's plant. If a jury believes Romo's evidence that no one associated with it disassembled the temperature sensor, the jury could reasonably conclude that the disassembly occurred when the device was sent to Briskheat for repairs. Of course, the jury would also have to conclude that the solder joint was only weakened during the process and continued to function properly for more than a year when put back into use until December of 2012. While Plaintiffs' expert does not explicitly address this question in his report, the possibility of the device continuing to function for a period of time after the damage is implicit in his conclusion that damage likely occurred during the disassembly/reassembly process. Defendants' motion for summary judgment on Plaintiffs' claim of negligence is therefore denied.

**E. Strict Product Liability**

Under Wis. Stat. § 895.047, a plaintiff must establish five elements by a preponderance of the evidence to prevail on a claim of strict product liability. The plaintiff must prove that "(1) the product is defective in design, manufacture or warnings; (2) the defect rendered the product unreasonably dangerous; (3) the defective condition existed at the time the product left control of the manufacturer; (4) the product reached the user without substantial change in condition; and (5) the defective condition was the cause of the complained-of harm." *Johnson v. Mylan Inc.*, 2015 WL 3466090, at *3 (E.D. Wis. June 1, 2015).

Plaintiffs have offered no evidence that the barrel heater it purchased from Briskheat was defective in its design. Instead, Plaintiffs argue that if the jury credits the testimony offered by both Romo and Briskheat that none of their employees attempted to dissemble or reassemble the temperature sensor after Briskheat sold it to Romo, and if the jury also credits testimony offered by Romo that the barrel heater was properly used in the manner intended and not subjected to any misuse or mishandling, it would be reasonable to conclude that the heater had a manufacturing defect that caused its failure. In support of this argument, Plaintiffs argue that the mechanical failure of the solder joint is evidence of a manufacturing defect. Plaintiffs cite *Greco v. Bucciconi Engineering Co.*, for the proposition that "[a] malfunction evidences a defect." 283 F. Supp. 978, 984 (W.D. Pa. 1967) *aff'd*, 407 F.2d 87 (3d Cir. 1969). *Greco* is also cited in the note on the law of product liability published by the Wisconsin Civil Jury Instructions Committee in support of its statement that "[t]he mere showing of product malfunction evidences a defective condition." Wis. Civil J.I. 3200 Products Liability: Law Note (2012).

In reply, Defendants argue that Plaintiffs cite outdated and foreign case law in making their strict liability argument. Plaintiffs never mention Wis. Stat. § 895.047, which sets out the current legal standard for strict product liability actions in Wisconsin commenced after January 21, 2011. But the Defendants fail to articulate why Plaintiffs' lack of citation to the updated statute decisively turns the case in their favor and makes summary judgment appropriate. While important changes were made to products liability law in Wisconsin in 2011, that does not necessarily render Plaintiffs' arguments moot as a matter of law.

Wisconsin's new product liability states that a "[a] product contains a manufacturing defect if the product departs from its intended design even though all possible care was exercised in the design of the product." Wis. Stat. 895.047(1)(a). Defendants suggest that this language significantly changes prior law, but they point to no provision that would lead the court to conclude that the fact that a properly designed product fails prematurely from normal and expected use would not constitute evidence of a defect in its manufacture. That is essentially what Plaintiffs contend.

Plaintiffs make a straightforward argument for strict product liability and though their evidence may be limited, I cannot say that it fails for the purpose of summary judgment. Plaintiffs' argument relies on a set of disputed propositions that, if true, establish the elements necessary to show that Briskheat is strictly liable. To begin, Plaintiffs argue that nothing happened to the temperature sensor which could have caused the solder joint to break such as negligent handling, repair, or use. Plaintiffs put forward witnesses who will testify in support of this claim. This evidence, if believed, could satisfy the element that the defective condition existed at the time the product left Briskheat's control and that the product reached Romo without substantial change. Next, Plaintiffs argue that the solder joint breaking is evidence of a defect in itself. Plaintiffs' expert

10

will explain how a manufacturing defect could have caused the solder joint to break. This argument is closely related to the first and is critical to show that the barrel heater contained a manufacturing defect in departing from its intended design. While it is true that the metallurgical analysis needed to identify a manufacturing defect, if one existed, was apparently not performed by Plaintiffs' expert, this does not eliminate the inference that in the absence of mishandling or a negligent repair effort, a manufacturing defect is the most likely explanation for the failure.

Defendants do not dispute that the broken solder joint rendered the barrel heater unreasonably dangerous or that the broken joint was a cause of Plaintiffs' damages. To be sure, Plaintiffs have a number of difficult hurdles to leap before proving strict liability, but the evidence they put forth raises a genuine dispute of material fact as to whether the heater was defective when it was sold to Romo.

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment will be **DENIED**. The Clerk of Court shall set a telephone conference in this case for further scheduling.

**SO ORDERED** this  24th  day of November, 2015.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court

11